James and Vilma Lennox et al., Appellants *v.* Zoning Board of Adjustment of the City of Pittsburgh, Appellee.

418

Argued May 5, 1982, before President Judge CRUMLISH and Judges WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Paul H. Titus, Titus, Marcus & Shapira,* of counsel: *Judith L. Maute,* for appellants.

*D. R. Pellegrini,* Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, July 14, 1982:

James and Vilma Lennox (Petitioners), owners of the property in question, along with Margaret C. Albert and Christine King,[1] adjoining property owners, appeal here from a denial of an occupancy permit by the Court of Common Pleas of Allegheny County. The Court of Common Pleas affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Zoning Board), denying Petitioners' application to occupy their property as a three family dwelling in a two family district.

The property has been zoned as an R-2 two family district since the enactment of the Zoning Ordinance of 1958 and under the prior Ordinance of 1923 the property was classified as a B residence district which permitted only one or two family occupancies.

From the record it appears that the building involved was originally erected in 1905 as a two story single family dwelling with three detached garages. Sometime later,[2] the house was converted into a duplex with two sun porches, two gas and electric meters and two furnaces. It is not clear when the conversion to a three unit dwelling took place but Petitioners offered some evidence that since 1936, the property was used as a three unit dwelling and that it was used for that purpose when they purchased it in 1954. At that time and at the present the building is a two and one-half story residential dwelling with the three detached garages, two sun porches, two gas and electric meters and two furnaces. At the time they purchased the

---

[1] We are not sure what possible interest these adjoining property owners have to give them standing in this action; however, their standing has not been challenged and we will not address that issue here.

[2] Although Petitioner's could not establish exactly when the conversion occurred, they attempted to prove that it was prior to 1923.

building, Petitioners did not check the zoning ordinance[3] or attempt to secure a multifamily occupancy permit.

In January of 1981, Petitioners applied for an occupancy permit for a three family unit dwelling, contending that the city was estopped, under a theory of vested rights, from enforcing the provisions of the zoning ordinance due to the municipal acquiescence to the nonconforming use, or, in the alternative, that they were entitled to an occupancy permit based on a prior legal nonconforming use.

A hearing was held before the Zoning Board and on March 26, 1981, Petitioners' application was denied, the Board finding that Petitioners failed to demonstrate the existence of a legal nonconforming use which predated the enactment of the 1923 Zoning Ordinance.[4]

Petitioners then appealed to the trial court which, without taking additional testimony, affirmed the decision of the Zoning Board. Neither the Zoning Board nor the trial court dealt with the vested rights issue presented by the Petitioners.

The issues presented before this Court on appeal are whether the Zoning Board abused its discretion in finding that the nonconforming use was not in existence prior to the prohibitory Zoning Ordinance of 1923 and whether the Zoning Board abused its discretion or committed an error of law in refusing to con-

---

[3] Petitioners were "duty bound to check the zoning status of the property before purchase." *Hasage v. Philadelphia Zoning Board of Adjustment*, 415 Pa. 31, 35, 202 A.2d 61, 64 (1964).

[4] Petitioners attempted to show a legal nonconforming use by showing that "as far back" as some of their witnesses could remember the building was used as a three unit dwelling. One neighbor remembered that the building had three units in 1936 when she first moved to that block. None of Petitioners' witnesses, however, could testify that the three units existed prior to 1923.

sider the evidence and issue an occupancy permit under the theory of vested rights?

It is well settled that where the trial court has taken no additional evidence, our scope of review is limited to determining whether or not the Zoning Board committed an abuse of discretion or an error of law. *Ottaviano v. Zoning Board of Adjustment of Philadelphia,* 31 Pa. Commonwealth Ct. 366, 376 A.2d 286 (1977).

On the issue of nonconforming use, two salient points of view were emphasized by this Court in *Municipality of Penn Hills v. Zoning Hearing Board,* 60 Pa. Commonwealth Ct. 286, 288, 431 A.2d 383, 384 (1981):

(1) "The burden of proving the extent or existence of a nonconforming use rests on the property owner who would claim the benefit of the rights accorded property with that status" . . . and (2) "The benefit of legal nonconforming use status is available only to that lawful use which existed on the land at the time when the prohibitory zoning (to which the use does not conform) took effect." (Citations omitted.)

We are well satisfied from our review of the record that the Zoning Board's finding, affirmed by the trial court, that Petitioners failed to demonstrate that their three family dwelling was in lawful existence prior to the prohibitory Zoning Ordinance of 1923 was neither an abuse of discretion nor an error of law. Where the alleged nonconforming use does not predate the existing zoning restrictions, it cannot be a valid one. *See* R. Ryan, Pennsylvania Zoning Law and Practice §7.1.1 (1970).

Neither the Zoning Board nor the trial court addressed specifically the issue of whether the permit should have been granted on the basis of variance by estoppel or vested right.

A claim of vested right . . . is similar to one of nonconformance for it usually is based in part on a prior status which the applicant asserts permits him to continue or to complete a use or structure. Here, however, protection is afforded, when it is afforded at all, not because the use or building predates zoning, but because it has become inequitable to enforce the restriction against the owner because of action or inaction by the municipality.

R. Ryan, Pennsylvania Zoning Law and Practice §7.1.1 (1970). Since a claim of vested right does differ both in theory and fact from a landowner's rights based upon a prior legal nonconforming use, the landowner's burden of proof is likewise different. Therefore, if the evidence presented to the Zoning Board would arguably support the grant of a permit on this basis, we would be compelled to remand this case for specific findings by the Zoning Board. *Hanlen v. State College Zoning Hearing Board,* 60 Pa. Commonwealth Ct. 190, 430 A.2d 1236 (1981).

It is clear from the record in this case[5] and the argument presented by Petitioners' counsel, that Petitioners base their claim of vested right upon the alleged acquiescence of the City of Pittsburgh in the continued existence of the illegal use of their property. It appears that the illegal use has continued for many years, but that fact in and of itself is not enough to justify a variance based upon a vested right, absent some evidence that the municipality involved knew or should have known of the illegal use. *Draving v. Lower Southampton Township Zoning Hearing Board,* 40

---

[5] Petitioners contend that the Zoning Board refused to accept evidence on the vested right issue. Our review of the record indicates that the Zoning Board accepted all of the evidence offered by Petitioners except that which referred to allged illegal uses by other property owners in the same neighborhood.

Pa. Commonwealth Ct. 243, 397 A.2d 54 (1979). Municipal inaction alone cannot support a variance or a vested right. *Id.* Petitioners' evidence to support the city's acquiescence in the illegal use is that there were three mailboxes visible from the street, three separate, published telephone listings for the address of the property, three garages and at least one adult employed from each of the three units in the building who paid taxes to the city of Pittsburgh.[6] Taken together or viewed separately, the evidence is simply insufficient as a matter of law to put the city on notice of the illegal use. To state it another way, if the Zoning Board were to find from such evidence that a vested right had been established, we would be compelled to reverse as a matter of law. A remand, therefore, would only extend this litigation and could produce no result other than the one which we have now reached.

The cases relied upon by Petitioners to support their argument in favor of a vested right are readily distinguishable on their facts or are inapposite to the case now before us. In *Sheedy v. Zoning Board of Adjustment,* 409 Pa. 655, 187 A.2d 907 (1963) the municipality *knowingly* permitted the illegal use for many years. In *Draving* we denied the landowners' contention that they were entitled to a variance by estoppel because of lack of evidence that the municipality knew or should have known of the illegal use (a pottery operation). *Heidorn Appeal,* 412 Pa. 570, 195 A.2d 349 (1963) involved an extension of a building which

---

[6] Petitioners also attempted to show the city's acquiescence by presenting evidence that the city accepted taxes based on the property's classification as a 2½ story duplex. Nothing in the record showed that tax assessments were based on three units in the Petitioners' building; rather, the evidence indicated that tax assessments were made on the property itself, not the number of units in the building.

"stuck out like the proverbial sore thumb, and the stoop stuck out like the stoop it was for the world to see and stumble over." *Id.* at 573, 195 A.2d at 351. Such evidence is totally lacking in the instant case.

Order affirmed.

### Order

It is ordered that the order of the Court of Common Pleas of Allegheny County, dated July 21, 1981, is hereby affirmed.

---

Dissenting Opinion by Judge Williams, Jr.:

I must respectfully dissent. Although I support the reluctance of the majority to extend this litigation, I am compelled to disagree with the contention that we can resolve a question not addressed by either lower tribunal. Specifically because the theory and fact of a vested right claim differ from that of a prior non-conforming use action, and because the property owner's burden of proof is different in each action, I opine that a legal issue first decided by this Court must perforce be based on latent findings of fact. Such factual resolutions, however inferential, are beyond our scope of review. I would remand to the lower court and direct it to come to a reviewable conclusion on the vested right question.