Marshall Chevrolet, Inc., Appellant *v.* Zoning Hearing Board of the City of Reading, Berks County, Pennsylvania and Masano Realty, Inc., Appellees.

Argued February 2, 1981, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Franklin E. Poole, III*, for appellant.

*Calvin Lieberman*, for appellee.

*Eugene C. LeManna, Austin, Boland, Connor & Giorgi*, for intervenor.

OPINION BY JUDGE CRAIG, March 17, 1981:

Marshall Chevrolet, Inc., objector, appeals from the order of the Court of Common Pleas of Berks

County which, without taking evidence, affirmed the action of the Zoning Hearing Board of the City of Reading permitting Masano Realty to raze a small existing garage and to pave and enclose the lot on which it sat for use as a security compound for storage of new automobiles. The board granted permission on the theory that, although the subject property is and has been zoned residential since 1957 when Reading first adopted zoning, Masano was entitled to undertake its proposal as continuation of commercial parking found by the board to be a legal nonconforming use.

Because the common pleas court took no evidence, we review the board's decision to determine whether it abused its discretion or committed errors of law. *Muse v. Zoning Hearing Board of Ben Avon Heights Borough,* 52 Pa. Commonwealth Ct. 287, 415 A.2d 1255 (1980). The objector contends that the board's findings and conclusions as to legal nonconforming use status are unsupported and thus that the board abused its discretion and erred in law by granting the permit. We agree.

The benefit of legal nonconforming use status is available only to that lawful use which existed on the land at the time when the prohibitory zoning (to which the use does not conform) took effect. Thus, in this case, the threshold question is to what use was the land put in 1957 when Reading adopted its first zoning ordinance. Only when that question has been resolved can we determine whether commercial use became a legally protected category.

On this threshold issue, the board here found only that:

> 10. Continuously from 1958 to date, the property has been used for the parking of employees' vehicles and used cars.
>
> . . . .

14. At no time has the property been used in conformity with the Zoning Ordinance of the City of Reading.

The former finding expressly speaks to the use conducted by the applicant since acquiring its interest in the property in 1958, *after* the 1957 ordinance took effect; the finding is therefore irrelevant to the threshold question. The latter finding is conclusory, and does not indicate what actual use or uses were made of the property in 1957, nor whether any such use has been *legally* nonconforming. The common pleas court seemed to recognize those shortcomings, by stating that "[*i*]*mplicit* in the board's decision was the finding that at the time of the enactment of the 1957 Zoning Ordinance, the property was being used for commercial purposes. . . . This finding was essential to the existence of the nonconforming use." (Emphasis ours.) Precisely because we agree that such a finding was essential, we must regard its absence as fatal.

The absence of an express finding on this threshold question might normally call for a remand; however, no such action is warranted because the record contains no substantial evidence relating to any use of the property in 1957, other than that the building on the property has existed since at least 1957. Although that building has been a garage, with dimensions 30-feet by 45-feet according to the testimony most favorable to applicant, there is no evidence that it was, in 1957, a *commercial* garage either by design or usage. The only board finding concerning the garage states:

11. Continuously from 1958 the single-story building on the premises has been used for the storage of auto parts and tires.

Again, the finding reaches back only to 1958, not to the key year 1957 or earlier.

The record is replete with photographic and testimonial evidence as to applicant's commercial automotive use of the property since 1958, but the *only* evidence relating even obliquely to the property's use in 1957 is the following exchange between applicant's vice president and its counsel:

A. We purchased the property from a Raymond and Margaret Wixon.

Q. And you bought the property in September of 1958?

A. That is correct.

Q. At the time you bought the property from the Wixons, how were they utilizing the subject property?

A. At the time that we purchased the property from Wixon they had a, a building that is shown on this map here and they were using it for parking of vehicles to my knowledge at the time. And I think they were using it for storage of baked goods or equipment, whatever they had in that garage. I am not sure exactly what they were using it for.

Q. Were they in the bakery business, if you remember?

A. To my knowledge they were in the bakery business.

Q. Is it possible they had trucks parked on this land as well?

A. It's possible.

Q. And they utilized this for delivery and receiving of baked goods?

A. That is possible.

Q. You are not sure?

A. I am not positive.

Thus, there is no substantial evidence of any 1957 use at all. As we said in *Hodge v. Zoning Hearing Board*

*of West Bradford Township*, 11 Pa. Commonwealth Ct. 311, 317, 312 A.2d 813, 817 (1973):

> [I]n determining whether or not a nonconforming use existed, '[o]nly physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind.' Cook v. Bensalem Township Zoning Board of Adjustment, 413 Pa. 175, 179, 196 A.2d 327, 330 (1964).

Accordingly, the board's grant of applicant's request was legal error and will be reversed. *See Hager v. Manheim Township Zoning Hearing Board,* 23 Pa. Commonwealth Ct. 361, 367, 352 A.2d 248, 252 (1976).

### Order

And Now, March 17, 1981, the December 19, 1979 order of the Court of Common Pleas of Berks County at No. 65 October, 1978, affirming the action of the Zoning Hearing Board of the City of Reading, is reversed.